UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Rick Wansitler,

    Plaintiff,

v.                                                        Case No. 10-12404

                                                             Honorable Sean F. Cox

Hurley Medical Center,

    Defendant.

_____/

## OPINION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Rick Wansitler ("Wansitler" or "Plaintiff") filed this action against his former employer, Defendant Hurley Medical Center ("HMC" or "Defendant"), alleging violations of the Family and Medical Leave Act ("FMLA"), § 1981[1], the Americans with Disabilities Act ("ADA"), and related state claims. The matter is before the Court on Defendant's Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral argument on July 14, 2011. For the reasons set forth below, the Court shall GRANT Defendant's Motion for Summary Judgment as it relates to Plaintiff's FMLA claims and DENY Defendant's motion as it relates to Plaintiff's WDCA, Title VII, ELCRA, ADA, and PWDCRA claims.

### BACKGROUND

Plaintiff filed this action against HMC on June 18, 2010. Plaintiff's Complaint asserts the following counts: "Retaliation Under the Family and Medical Leave Act" (Count I);

---

[1]While Plaintiff alleges a § 1981 claim in his complaint, it is apparent from his response to Defendant's motion that he is actually alleging a Title VII race discrimination claim, rather than a racial harassment claim under § 1981.

1

"Interference Claim Under the Family and Medical Leave Act" (Count II); "MCLA §418.301(11) Workers Compensation Disability Act Retaliation Claim" (Count III); "Michigan Elliot-Larsen Civil Rights Act MCLA §37.2202 Race Discrimination Claim" (Count IV); "42 USC §1981 Race Discrimination Claim" (Count V); "Michigan's Persons with Disabilities Civil Rights Act Claim" (Count VI); and "Americans with Disabilities Act Claim" (Count VII).

Following the close of discovery, Defendant filed its Motion for Summary Judgment on March 15, 2011. (Def's Br., Doc. No. 15).  The following material facts are gleaned from the briefs and evidence submitted by the parties, taken in the light most favorable to Plaintiff.

HMC hired Plaintiff, a white male, for two, consecutive, 90-day temporary assignments as a Public Safety Officer on August 14, 2007.  HMC hired Plaintiff as a "regular, part-time, probationary employee " on February 10, 2008.  According to HMC's Labor Relations Administrator, David Szczepanski, if a probationary employee accumulates three absences during any four-month evaluation period, that employee's attendance is considered less than "satisfactory" and may warrant termination.  (Szczepanski Dep. at 21-22, 29).  Dawn Woodruff, one of Plaintiff's direct supervisors, testified that "generally four" absences result in a discharge.

After his first four months of regular employment (February 11, 2008 to June 10, 2008), Plaintiff was evaluated by Dawn Lovett, Plaintiff's Senior Supervisor, who is an African-American woman.  Ms. Lovett gave Plaintiff a "satisfactory" score of 3.8 out of 5 on his performance review.  (Def's Br, Ex. R).

On June 16, 2008, during the course of his employment, Plaintiff injured his knee in an altercation with a psychiatric patient.  Plaintiff allegedly suffered a meniscus tear in his right knee. (Plf's Br., Ex. 9).  As a result of this injury, Plaintiff was out of work for approximately

five weeks.  Upon his return to work, Plaintiff could not resume his previous duties because of his knee pain, and was restricted to working at the officer dispatch desk.

Plaintiff alleges that he began receiving hostile treatment from his supervisors immediately after he submitted his application for workers' compensation benefits.  Plaintiff states that on June 26, 2008, Ms. Lovett delayed Plaintiff from timely attending a medical appointment and told him "that his injury was not serious and that he did not need to be off work." (Wansitler Declaration at ¶ 8).  Additionally, Roy Pruitt, the Charge Officer who supervised Plaintiff and union president, stated that during the summer of 2008, Nancy Roschival, the Workers' Compensation Assistant at HMC, told him that Plaintff had been "'milking' his workers' compensation."  (Pruitt Declration at ¶ 28).

After Plaintiff's next four months of employment (June 13, 2008 to October 11, 2008), Plaintiff was evaluated by Mark Mitchell, a white male.  Mr. Mitchel gave Plaintiff a "very good" score of 3.5 out of 5 on this second performance review.  (Def' Br., Ex. S).

On November 1, 2008, Mr. Mitchell notified Plaintiff that he was put on a "Notice of Investigation" because of an absence on October 27, 2008.  (Plf's Br. at 3).  This absence, however, was approved without pay on November 3, 2009 by one of Plaintiff's other supervisors. (Plf's Br., Ex. 12).

On November 3, 2008, Ms. Roschival terminated Plaintiff's workers' compensation benefits after Plaintiff scheduled a biopsy at the recommendation of his treating physician, Dr. Safley, in order to "rule out" whether Plaintiff had a sarcomatous lesion in his knee.  (Plf's Br., Ex. 14).  Apparently, a sarcomatous lesion is an ailment that would be unrelated to Plaintiff's knee injury that occurred on June 16, 2008.

On January 6, 2009, a meeting occurred in the dispatch office between Plaintiff, Ms. Lovett, Public Safety Officer Jamal Dozier, and Public Safety Officer James Williams. (Plf's Br. at 4). At that meeting, Ms. Lovett gave Plaintiff a "Notice of Investigation" regarding the possession of a personal recording device. Recording conversations on the HMC premises without the consent of the person being recorded is a violation of HMC's policies. (Def's Br., Ex. L).

Ms. Lovett first issued a Notice of Investigation that stated, "You are being placed on notice for possibly having possession of a recording device." According to Plaintiff, after the meeting with Ms. Lovett, Plaintiff relayed to Mr. Pruitt that he had received a Notice of Investigation. Mr. Pruitt, as union president, approached Dawn Woodruff, another of Plaintiff's supervisors, about the notice and explained to her that simply possessing a recording device is not a violation of policy. After Mr. Pruitt spoke to Ms. Woodruff about Plaintiff's Notice of Investigation, Ms. Lovett issued a second Notice of Investigation to Plaintiff that same day. The updated Notice of Investigation added the following statement: "When asking about the recording device you admitted you had and it was out on the counter recording while I was in dispatch." (Plf's Br., Ex. 17). Plaintiff denies ever using the recorder to record any conversations with others. (Wansitler Dep. at 23). Furthermore, Mr. Dozier and Mr. Williams issued declarations (which are not dated) stating that Plaintiff had not been recording the January 6, 2009 meeting with Ms. Lovett. (Plf's Br., Exs. 18, 19).

On January 25 and 26 of 2009, Defendant asserts that Plaintiff called in to work and notified HMC that he would be absent on those days. These were his second and third absences in the four-month rating period.

Plaintiff provided Ms. Lovett with a physician's note on January 27, 2009, indicating that he was undergoing surgery and would be out of work for six weeks. HMC contends that Plaintiff was not placed on disability leave because Plaintiff was not eligible for fringe benefits due to his probationary employment status.

On January 28, 2009, Plaintiff received a phone call from Mr. Pruitt, who informed Plaintiff that he had been fired that morning. (Plf's Br. at 6). That same day, Ms. Lovett, mailed Plaintiff a "Record of Disciplinary Action," which stated:

> On 1/06/09 you were placed on notice by me for an alleged violation of HMC SP Number 150 'Recording Conversation.' By your own admissions you had been recording conversations and in fact were observed recording our conversation in the presence of Local 814 representatives on 1/06/09. As a result of this investigation and due to two less than satisfactory ratings (attendance, accountability) on your third probationary evaluation, your employment is being terminated as an unsatisfactory probationary employee.

(Def's Br., Ex. P).

Plaintiff contends that his absences were not sufficient to warrant his termination. Plaintiff states that, of his five absences alleged by HMC during his third evaluation period, two of those absences were excused and he wasn't even scheduled for two more of the alleged absences. (Plf's Br. at 7).

On February 5, 2009, following the letter from Ms. Lovett, Plaintiff was evaluated for the period from October 15, 2008 through the date of his termination. Plaintiff was evaluated by Dorinda Broom, a white female, who gave Plaintiff a "questionable" score of 2.43 out of 5. (Def's Br. Ex. T). Ms. Broom gave the following reason for Plaintiff's poor score on his performance review:

> His rating in attendance dropped below satisfactory and there was

5

> no way it could be brought up to satisfactory before the end of his 3rd probationary period. Additionally, PSO Wansitler admitted to one of the supervisors that he had a voice activated recorder that he was using while on duty to record conversation without the other persons knowledge or consent. This is a violation of one of HMC Standard Practices.

(Def's Br., Ex. T at 1).

HMC sent a "Notice of Termination" to Plaintiff on February 25, 2009. (Def's Br., Ex Q). Plaintiff filed an EEOC claim for race and disability discrimination on September 24, 2009. On April 21, 2010, Plaintiff received a Notice of Right to Sue from the EEOC.

## LEGAL STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

I.    Plaintiff's FMLA Claims:

As explained in *Taylor v. Union Institute*, 30 Fed. Appx. 443, 452 (6th Cir. 2002), the FMLA creates both prescriptive and proscriptive employee rights:

> The prescriptive rights created by the Act provide "entitlements" to employees and "set floors for employer conduct." To prevail on the basis of the Act's prescriptive rights, the plaintiff need not show that she was treated worse than other employees, just that she was denied the Act's entitlements. Proscriptive rights, on the other hand, prohibit disparate employer conduct with regard to employees taking leave.

*Id.* Thus, "[t]here are two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. §2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. §2615(a)(2)." *Smith v. Aco, Inc*., 368 F.Supp.2d 721, 731 (E.D. Mich. 2005).

Here, Plaintiff's Complaint alleges both a retaliation claim (Count I) and an interference claim (Count II) under the FMLA. Under 29 U.S.C. § 2611(2)(A), an "eligible employee" under the FMLA is an employee who has been employed "(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a). Additionally, FMLA regulations provide:

> [W]hether an employee has worked the minimum 1,250 hours of service is determined according to the principles established under the Fair Labor Standards Act (FLSA) for determining compensable hours of work. (See 29 CFR part 785). The determining factor is *the number of hours an employee has worked* for the employer within the meaning of the FLSA. The determination is not limited by methods of recordkeeping, or by compensation agreements that do not accurately reflect all of the hours an employee has worked for or been in service to the employer.

29 C.F.R. § 825.110(c). (emphasis added). The Sixth Circuit has held that "hours of service" under the FMLA includes only those hours actually worked in the service and at the gain of the employer. *See Mutchler v. Dunlap Memorial Hospital*, 485 F.3d 854, 858 (6th Cir. 2007) (citing *Plumley v. S. Container, Inc.*, 303 F.3d 364, 372 (1st Cir.2002)).

According to Plaintiff, he began his FMLA leave when he submitted a physician's note to HMC on January 27, 2009 indicating that he would be out of work for six weeks. HMC, however, asserts that Plaintiff is not an eligible employee under FMLA guidelines. HMC contends that Plaintiff did not meet requirement (ii) of 29 U.S.C. § 2611(2)(A) because Plaintiff did not work for at least 1,250 hours during the 12-month period ending on January 26, 2009. (Def's Br. at 7).

In support, HMC submitted Plaintiff's time records for the period that Plaintiff was employed by HMC. These records indicate that from January 26, 2008 to January 26, 2009, Plaintiff worked 885 hours, making him an ineligible employee under the FMLA. (Def's Br., Ex. B). The records submitted by HMC, however, were not complete and were missing data from significant periods of Plaintiff's employment. At the July 14, 2011 hearing, Counsel for HMC indicated that the time records submitted to the Court by HMC were, in fact, incomplete, but that the complete collection of records would show that Plaintiff did not work for 1,250 hours from January 26, 2008 to January 26, 2009.

Along with his response brief, Plaintiff submitted all of his pay stubs for this same 12-month period. Plaintiff alleges that his pay stubs show that he worked 1,327 hours for the year prior to making his FMLA request. (Plf's Br., Ex. 8). At oral argument, Counsel for HMC noted that these pay stubs still fail to establish that Plaintiff worked 1,250 hours because they

8

2:10-cv-12404-SFC-MJH   Doc # 22   Filed 08/11/11   Pg 9 of 19   Pg ID 345

include "holiday" hours for which Plaintiff was compensated but did not actually provide "hours of service."

As stated above, in determining the number of hours an employee has worked, the Court must only consider only the hours actually worked. Thus, the Court may not consider the holiday hours identified on Plaintiff's pay stubs, because these are not actual hours worked by Plaintiff.. *See Mutchler v. Dunlap Memorial Hospital*, 485 F.3d at 858 (6th Cir. 2007) (holding that "weekender" hours could not be applied toward the FMLA's 1,250-hour requirement because, although the plaintiff was compensated for these hours, they were not hours actually worked.). By the Court's calculations of Plaintiff's pay stubs, HMC compensated Plaintiff for 1,233 hours actually worked from January 26, 2008 to January 26, 2009. Therefore, the pay stubs indicate that Plaintiff worked less than the required 1,250 hours required to become an "eligible employee" under the FMLA. Plaintiff is therefore not "eligble" under the FMLA and Plaintiff's FMLA retaliation and interference claims fail. The Court shall grant Defendant's motion for summary judgment as it relates to Plaintiff's FMLA claims.

II.  Plaintiff's WDCA Claim:

   A. Prima Facie Case:

Plaintiff also alleges retaliation under Michigan's Workers' Disability Compensation Act ("WDCA"), in violation of M.C.L. § 418.301(11). In order to establish a *prima facie* case for retaliation under the WDCA, Plaintiff must prove that "(1) he asserted his right to workers' compensation benefits; (2) the Defendants knew that Plaintiff asserted his right to workers' compensation benefits; (3) the Defendants terminated Plaintiff; and (4) there was a causal connection between Plaintiff's assertion of his right to workers' compensation benefits and his

9

termination." *Chisolm v. Michigan AFSCME Council 25*, 218 F.Supp.2d 855, 873-74 (E.D. Mich. 2002) (Borman, J.) (citing *Chiles v. Machine Shop, Inc.*, 238 Mich.App. 462, 470, 606 N.W.2d 398 (1999)).

Plaintiff must proceed under the *McDonnell Douglas* analysis in establishing his retaliation claim under the WDCA. *Chisolm*, 218 F.Supp.2d at 874. "Once a plaintiff establishes a prima facie case, the *McDonnell Douglas* approach shifts the burden to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision." *Id*. If the defendant is able provide legitimate, nondiscriminatory reasons for the adverse employment action, the burden shifts back to the plaintiff to establish that defendant's legitimate reasons were a pretext for discrimination. *Id*.

Here, there is no dispute that Plaintiff asserted his right to workers' compensation benefits, that HMC knew that Plaintiff asserted this right, and that HMC eventually terminated Plaintiff. HMC, however, contends that Plaintiff cannot establish the fourth element of a WDCA retaliation claim – a causal connection between the protected activity and his termination. HMC contends that Plaintiff does not allege any facts tending to show a causal connection between Plaintiff's assertion of his workers' compensation disability benefits and his discharge. Moreover, HMC asserts that the temporal proximity of Plaintiff's discharge, alone, is insufficient to demonstrate a causal connection.

Plaintiff began receiving workers' compensation benefits soon after Plaintiff injured his knee during his June 16, 2008 altercation with a psychiatric patient. (Plf's Br. at 2). Plaintiff received disability benefits until November 3, 2010, when HMC terminated Plaintiff's benefits after an investigation that determined that Plaintiff's injuries were not work related. (Plf's Br.,

Ex. 14). Plaintiff was terminated almost three months later.

With regard to federal claims of retaliation, the Sixth Circuit has explained that where the temporal proximity between the protected activity and the adverse action is acutely near in time, that close proximity is deemed indirect evidence of a causal connection. *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2007). Under Michigan law, however, the temporal connection between the exercise of a plaintiff's workers' compensation disability rights and his termination is not sufficient to prove that the two events were causally connected. *West v. Gen. Motors Corp.*, 469 Mich. 177, 186, 665 N.W.2d 468 (2003).

In this case there exists a short temporal proximity between when Plaintiff last received workers' compensation benefits and his termination. Although this alone is not enough, the record also contains other evidence that, when construed in a light most favorable to Plaintiff, may establish a causal connection. The first instance of hostility directed toward Plaintiff occurred on June 26, 2008, when Ms. Lovett stated to Plaintiff, who was on his way to a doctor appointment, that his injury was not serious and that he did not need time off of work. (Plaintiff Declaration at ¶ 8). Plaintiff also points to the declaration of Mr. Pruitt, the union president, which states that Nancy Roschival, the Workers' Compensation Assistant at HMC, told him that Plaintiff had been "'milking' his workers' compensation." (Pruitt Declaration at ¶ 28). Although this statement had occurred prior to Plaintiff's request for leave, it may be construed as reflecting a discriminatory animus towards Plaintiff's medical condition.

Plaintiff has provided sufficient proof of a causal connection between the exercise of his rights under the WDCA and his termination. Accordingly, based on the evidence before the Court, Plaintiff has created an issue of fact as to whether he can establish a prima facie case of

retaliation under the WDCA.

B. Pretext:

If a plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge. Here, HMC contends that Plaintiff was terminated for failing to meet attendance requirements during Plaintiff's probationary period, and for recording conversations in violation of HMC policy.

As stated above, a plaintiff seeking to prove discrimination via indirect evidence must submit sufficient evidence from which a reasonable jury could conclude that the defendant's legitimate, nondiscriminatory reasons for its actions are a pretext for unlawful discrimination.

A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason: (1) had no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Wexler v. White Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003). The first type of showing consists of evidence that the proffered basis for the termination never happened (*i.e.*, that they are factually false). With respect to the second kind of showing, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id*. The third showing consists of evidence that other employees, particularly those not in the protected class, were not fired even though they engaged in similar conduct. *Id.*

Here, the record before the Court reflects that there is a genuine issue of fact as to whether Plaintiff can establish pretext via the first and third types of showings. The record contains some significant circumstantial evidence of discriminatory animus that could cause a

reasonable juror to conclude that HMC's stated reasons for terminating Plaintiff are pretextual. With regard to HMC attendance claims, Plaintiff has provided evidence to show that he did not have three unscheduled absences during his third, four-month evaluation period. HMC contends that Plaintiff was absent on October 27, 2008, January 25, 2009, and January 26, 2009, and that these three absences justified Plaintiff's discharge. (Def's Br. at 3). Plaintiff, however, provided evidence that his October 27, 2008 absence was "approved with pay." (Plf's Br., Ex. 12). Plaintiff has also stated that he wasn't even scheduled for work on January 26, 2009. (Plaintiff Declaration at ¶ 10). Thus, in viewing the evidence in the light most favorable to the Plaintiff, only one of Plaintiff's absences from October 15, 2008 to the date of his termination was not excused. Even using Mr. Szczepanski's lower estimate of the number of absences that may warrant termination for a probationary employee (3 absences), there is a genuine issue of fact that Plaintiff did not accumulate enough unscheduled absences to warrant his termination.

With regard to HMC's claim that Plaintiff's termination was warranted because he recorded his conversation with Ms. Lovett during their January 6, 2009 meeting, Plaintiff has provided the declarations of Mr. Pruitt, Mr. Dozier, and Mr. Williams that tend to show that Plaintiff did not record the January 6, 2009 meeting. Additionally, Plaintiff himself testified that he never used his personal recorder to record conversations with others. (Plaintiff Dep. at 23). Moreover, Mr. Pruitt, the union president, declared, "The event that led to Mr. Wansitler's discharge, according to Hurley Medical Center, was the alleged recording of conversations. I have never seen an employee terminated for such a minor offense." (Pruitt Declaration at ¶ 25). Mr. Pruitt also stated that, within an hour of notifying Plaintiff's supervisors that merely possessing a recorder is not a violation of HMC's policy, Ms. Lovett amended her "Notice of

13

Investigation" to indicate that Plaintiff admitted to actually recording their meeting. (Pruitt Declaration #2 at ¶ 13; *See also* Plf's Ex. 15, 17). Even assuming Plaintiff recorded private conversations, Mr. Pruitt's statements are evidence that this violation was insufficient to warrant Plaintiff's termination.

In viewing all the evidence in a light most favorable to Plaintiff, Plaintiff has established that HMC's purported reasons for terminating Plaintiff are pretextual. Plaintiff has established a prima facie case for retaliation under the WDCA. Accordingly, the Court shall deny Defendant's motion for summary judgment as it relates to Plaintiff's WDCA claims.

III. Plaintiff's Race Discrimination Claims:

Plaintiff, a white male, also asserts that he was discriminated against on the basis of his race and has alleged claims under § 1981, as well as under Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). As noted above, Plaintiff's § 1981 claim is more accurately labeled a Title VII claim.

With regard to Plaintiff's race discrimination claims, Plaintiff has not submitted direct evidence of race discrimination on the part of HMC. Therefore, as with Plaintiff's FMLA and WCDA retaliation claims, under the circumstantial evidence approach, Plaintiff must show the existence of facts which create an inference of discrimination under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Both parties acknowledge that the *McDonnell Douglas* framework is applied to Plaintiffs ELCRA and Title VII claims, and that Plaintiff bears the burden of establishing a prima facie case. The parties also agree that in order establish a prima facie case of race discrimination, Plaintiff must establish that: (1) he is a member of the protected class; (2) he suffered an adverse

employment action; (3) he was qualified for the position he held, and (4) he was replaced by a person outside of the protected class or that similarly-situated non-protected employees were treated more favorably.  *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004).

HMC does not challenge the first three elements but contends that Plaintiff cannot establish a prima facie case because he has not proved the fourth element – that he was replaced by a person outside of the protected class or that similarly-situated, non-protected employees were treated more favorably.  HMC asserts that Plaintiff was never denied the same opportunities as his African-American peers and that two of the HMC employees who participated in Plaintiff's termination are white.

Plaintiff first contends that he was replaced by an African-American male, and therefore, has satisfied the fourth element of the prima facie case.  In race discrimination cases, the Sixth Circuit has found that an employee is considered replaced "only when another employee is hired or reassigned to perform the plaintiff's duties." *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir.2009) (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir.1990)).

To support his assertion that he was replaced by an African-American male, Plaintiff submitted the declaration of Mr. Pruitt.  In his declaration, Mr. Pruitt  stated, "The next person hired as a Public Safety Officer after Plaintiff's discharge was JaQuavis Johnson, who was an African-American male."  (Pruit Declaration #2 at § 20).  HMC has not denied this allegation.

An "employee's 'assertion regarding his replacement suffices to sustain a prima facie case' on summary judgment." *Graham v. Best Buy Stores, L.P.*, 298 Fed.Appx. 487, 494 (6th Cir. 2008) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir.2006)).  Based upon the record before the Court, the Court finds that a reasonable jury could conclude that

15

Plaintiff was replaced by Mr. Johnson. Accordingly, Plaintiff has established a prima facie case for race discrimination.

Plaintiff also asserts that his direct supervisor, Ms. Lovett, treated Plaintiff dissimilar from the African-American Public Safety Officers. (Plf's Br. at 19). Although Plaintiff alleges a number of instances in which he claims Ms. Lovett did not discipline African-American officers for certain violations, none of the purported violations are the same or similar to the alleged violations by Plaintiff. Plaintiff does not provide any evidence that African-American officers were not disciplined, or disciplined differently, for excessive absences or recording conversations on the HMC premises.

Nonetheless, Plaintiff has already sufficiently established his prima facie case for race discrimination by showing that he was replaced by an African-American Public Safety Officer. The burden then shifts to HMC to show that it terminated Plaintiff for legitimate, non-discriminatory reasons. As discussed with regard to Plaintiffs' WCDA claims, Defendant has already asserted that it terminated Plaintiff for excessive absences and recording private conversations. Again, Plaintiff has provided evidence tending to show that HMC's reasons for his termination were pretextual.

Plaintiff has therefore established a prima facie case for race discrimination. Accordingly, the Court shall deny Defendant's Motion for Summary Judgment as it relates to Plaintiff's Title VII and ELCRA claims.

IV. Plaintiff's Disability Discrimination Claims:

Plaintiff also alleges disability discrimination claims under the Americans with Disabilities Act ("ADA") and Michigan's Persons With Disabilities Civil Rights Act

16

("PWDCRA"). Under the ADA, plaintiffs may prove their cases through either direct or indirect evidence. *Monette v. Elec. Data Systems Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). In cases involving indirect evidence, the plaintiff must establish a prima facie case of discrimination by showing that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) that he suffered an adverse employment decision; (4) that the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Id*. at 1186-87.

ADA discrimination cases are also subject to the *McDonnell Douglas* burden-shifting framework. *Monette*, 90 F.3d at 1184. A plaintiff must first establish a prima facie case for disability discrimination. *Id*. at 802. Just like Plaintiff's other claims, the burden then shifts to the defendant to establish a legitimate, non-discriminatory reason for the adverse employment action. *Id*. If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's legitimate, non-discriminatory reason is a mere pretext for discrimination. *Id*. at 804.

The Sixth Circuit has held that the ADA and PWDCRA "substantially mirror" each other. *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 597 (6th Cir. 2002). "[R]esolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter*, 287 F.3d at 597. Therefore, the Court will consider the HMC's concurrent arguments under the ADA and the PWDCRA in tandem.

Plaintiff's response brief does not address the above elements or provide a legal analysis as to this claim, likely because HMC does not challenge whether Plaintiff has sufficiently proven

17

these elements. Plaintiff, however, has presented evidence that he was disabled, stating that he "was unable to walk, lift, bend down, and weight-bear" and for seven and a half months "was unable to walk without assistant devices, such as crutches." (Plaintiff's Declaration at ¶¶ 3, 6). Plaintiff has also provided evidence that he is an otherwise qualified person, with or without reasonable accommodation, because HMC admits that it provided Plaintiff with accommodations by allowing Plaintiff to work at the dispatch desk after he injured his knee in June of 2008. While working with this accommodation, Plaintiff's performance reviews did not reveal any issues with the quality of Plaintiff's work. It is also undisputed that Plaintiff suffered an adverse employment action when he was terminated, that HMC knew of Plaintiff's knee injury, and that Plaintiff was replaced.

In opposition to Plaintiff's ADA claim, HMC relies on the same legitimate, non-discriminatory reasons for Plaintiff's termination as discussed in Part II, above. As previously stated, Plaintiff has established that HMC's legitimate, non-discriminatory reasons for Plaintiff's termination were pretextual by providing circumstantial evidence that Plaintiff's termination was related to his injury.

Accordingly, the Court shall also deny Defendant's Motion for Summary Judgment as it relates to Plaintiff's ADA and PWDCRA claims.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment. The Court GRANTS Defendant's motion to the extent that it relates to Plaintiff's FMLA claims. The Court DENIES Defendant's motion to the

18

extent that it relates to Plaintiff's WDCA, Title VII, ELCRA, ADA, and PWDCRA claims.

IT IS SO ORDERED.

                s/Sean F. Cox  
                Sean F. Cox  
                United States District Judge

Dated: August 11, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 11, 2011, by electronic and/or ordinary mail.

                s/Jennifer Hernandez  
                Case Manager